# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| IN RE:<br><br>Application Pursuant to 28 U.S.C. § 1782 of SAINT-GOBAIN ADFORS S.A.S.<br><br>          Petitioner,<br><br><br>     To take discovery of –<br><br><br>3M COMPANY<br><br>        Respondent. | Misc. Case No. XX-mc-XX<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION OF SAINT-GOBAIN ADFORS S.A.S. FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782** |

tk-764200

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................... 2

ARGUMENT ......................................................................................................... 3

I.      Legal Standard ............................................................................................. 3

II.     Saint-Gobain Meets Section 1782's Threshold Requirements. ............................. 5

III.    The Supreme Court's *Intel* Factors Strongly Favor Granting Saint-Gobain's
Application. ................................................................................................... 6

A.     3M Is Not a Party to the Foreign Proceeding, and Limitations in the Foreign
Court Procedural Rules Hamper the Foreign Tribunals' Ability to Reach the
Evidence at Issue. ......................................................................................... 6

B.     Courts in the United Kingdom Are Receptive to U.S. Judicial Assistance ............ 9

C.     No Foreign Restrictions Bar Saint-Gobain's Requested Discovery ..................... 11

        1.     The foreign courts' broad receptivity to evidence, despite
more limited discovery procedures, make the third *Intel* factor
weigh in favor of discovery. ............................................................. 12

        2.     There is no exhaustion requirement. ................................................. 13

D.     Saint-Gobain's Request Is Not Unduly Burdensome ........................................ 14

IV.    A Protective Order Will Address Any Potential Confidentiality Concerns .......... 15

CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Advanced Micro Devices v. Intel Corp.*,
   292 F.3d 664 (9th Cir. 2002), *aff'd*, 542 U.S. 241 (2004) ............................................ 5

*Akebia Therapeutics, Inc. v. Fibrogen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) .................................................................................. 5, 7

*Andover Healthcare, Inc., v. 3M Co.*,
   No. 14-mc-44, 2014 U.S. Dist. LEXIS 141605 (D. Minn. Oct. 6, 2014),
   *aff'd* 817 F.3d 621 (8th Cir. 2016) ................................................................................ 4

*In re Application for an Order for Judicial Assistance in a Foreign
   Proceeding in the Labor Court of Brazil*,
   466 F. Supp. 2d 1020 (N.D. Ill. 2006) ........................................................................... 6

*In re Armcon Ltd.*,
   No. 18-mc-51, 2018 U.S. Dist. LEXIS 119567 (D. Minn. July 18, 2018) ............ 3, 6, 9

*In re Barnwell Enters. Ltd*,
   265 F. Supp. 3d 1 (D.D.C. 2017) .................................................................................. 6

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998) ........................................................................................ 14

*Bayer AG v. Betachem, Inc.*,
   173 F.3d 188 (3d Cir. 1999) ........................................................................................ 14

*In re Bloomfield Inv. Res. Corp.*,
   No. 18 MC 2608, 2018 U.S. Dist. LEXIS 206338
   (E.D.N.Y. Dec. 6, 2018) .............................................................................................. 13

*In re CA Inv. (Brazil) S.A.*,
   No. 19-mc-22, 2019 U.S. Dist. LEXIS 61060 (D. Minn. April 19, 2019) ........... *passim*

*In re Canadian Private Copying Collective*,
   No. 11-MC-0028, 2011 U.S. Dist. LEXIS 47008
   (D. Minn. April 14, 2011) ......................................................................................... 3, 6

*In re Cohen*,
   16-MC-2947 (MKB), 2016 U.S. Dist. LEXIS 169622
   (E.D.N.Y. Dec. 6, 2016) .............................................................................................. 11

tk-764200

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Consorcio Minero S.A. v. Doe Run Res. Corp.*,
No. 4:11-MC-583 (CEJ), 2011 U.S. Dist. LEXIS 112414
(E.D. Mo. Sept. 30, 2011) .................................................................................... 3

*Cryolife, Inc. v. Tenaxis Med., Inc.*,
No. C08-05124-HRL, 2009 U.S. Dist. LEXIS 3416 (N.D. Cal. Jan. 13,
2009) ............................................................................................................... 7, 13

*Eurasian Natural Res. Corp. v. Simpson*,
No. 8:19-mc-00699-PX, 2020 U.S. Dist. LEXIS 1507 (D. Md. Jan. 6,
2020) .................................................................................................................. 11

*In re Ferrer*,
No. 18-20226-CIV-O'SULLIVAN, 2018 U.S. Dist. LEXIS 111172
(S.D. Fla. July 3, 2018) ....................................................................................... 8

*In re Giorgio Armani S.P.A.*,
No.17-mc-80067-HRL, 2017 U.S. Dist. LEXIS 83512
(N.D. Cal. May 31, 2017) .................................................................................. 11

*In re Glob. Energy Horizons Corp.*,
No. 17-mc-80009-JSC, 2017 U.S. Dist. LEXIS 19511
(N.D. Cal. Feb. 10, 2017)................................................................................... 11

*In re Godfrey*,
No. 17-21631-CV-COOKE/GOODMAN, 2018 U.S. Dist. LEXIS 29794
(S.D. Fla. Feb. 22, 2018).................................................................................... 10

*Gov't of Ghana v. ProEnergy Servs., LLC*,
677 F.3d 340 (8th Cir. 2012) ............................................................................. 14

*Gov't of Ghana v. ProEnergy Servs., LLC*,
No. 11-9002-MC-SOW, 2011 U.S. Dist. LEXIS 75029
(W.D. Mo. June 6, 2011), *aff'd* 677 F.3d 340 (8th Cir. 2012)................................ 3, 16

*In re Hallmark Capital Corp.*,
534 F. Supp. 2d 951 (D. Minn. 2007)................................................................... 3

*Heraeus Kulzer, GmbH v. Biomet, Inc.*,
633 F.3d 591 (7th Cir. 2011) ........................................................................ 7, 13

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ................................................................................ *passim*

*In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*,
  No. 08-20378-MC-UNGARO/SIMONTON, 2011 U.S. Dist. LEXIS
  5201 (S.D. Fla. Jan. 19, 2011) ..................................................................... 7

*In re IPCom GMBH & Co. KG*,
  No. 5:14-mc-80037 (EJD) (PSG), 2014 U.S. Dist. LEXIS 50746
  (N.D. Cal. Apr. 10, 2014) .............................................................................. 8

*In re Joint Stock Co. Raiffeisenbank*,
  No. 16-mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090
  (N.D. Cal. Nov. 2, 2016) .............................................................................. 11

*In re Kegel*,
  67 F. Supp. 3d 1054 (D.N.D. 2014) ............................................................... 3

*In re Koninklijke Philips N.V.*,
  No. 17-MC-1681-WVG, 2018 U.S. Dist. LEXIS 14995
  (S.D. Cal. Jan. 30, 2018) ............................................................................. 11

*In re Kurbatova*,
  No. 18-MC-81554, 2019 U.S. Dist. Lexis 84030
  (S.D. Fla. May 20, 2019) ............................................................................. 12

*LEG Q LLC v. RSR Corp.*,
  No. 3:17-cv-1559-N-BN, 2017 U.S. Dist. LEXIS 140280
  (N.D. Tex. Aug. 31, 2017) ........................................................................... 11

*In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*,
  539 F.2d 1216 (9th Cir. 1976) ....................................................................... 1

*In re Lufthansa Technick AG*,
  No. C17-1453-JCC, 2019 U.S. Dist. LEXIS 12568
  (W.D. Wash. Jan. 25, 2019) .......................................................................... 8

*In re Macquarie Bank Ltd.*,
  No. 2:14-cv-00797-GMN-NJK, 2015 U.S. Dist. LEXIS 72544
  (D. Nev. May 28, 2015) ................................................................................ 8

tk-764200

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Macquarie Bank Ltd.*,
  No. 2:14-cv-0797-GMN-NJK, 2014 U.S. Dist. LEXIS 181626
  (D. Nev. June 4, 2014) .................................................................................... 7, 12, 13, 14

*In re Malev Hungarian Airlines*,
  964 F.2d 97 (2nd Cir. 1992) ........................................................................................ 14

*Mees v. Buiter*,
  793 F.3d 291 (2d Cir. 2015) .................................................................................. 11, 14

*In re Metallgesellschaft AG*,
  121 F.3d 77 (2d Cir. 1997) ............................................................................................ 9

*In re Microsoft Corp.*,
  No. C10-0170MJP, 2010 U.S. Dist. LEXIS 145423
  (W.D. Wash. Aug. 18, 2010) ...................................................................................... 13

*In re Novoship (UK) Ltd.*,
  20-60876-MC-ALTMAN, 2020 U.S. Dist. LEXIS 107257 (S.D. Fla.
  June 17, 2020) ............................................................................................................ 10

*Palantir Techs., Inc. v. Abramowitz*,
  415 F. Supp. 3d 907 (N.D. Cal. 2019) .......................................................................... 8

*In re Piraeus Bank*,
  No. 20-mc-210 (RA), 2020 U.S. Dist. LEXIS 87406 (S.D.N.Y. May 18,
  2020) .......................................................................................................................... 10

*In re PJSC Uralkali*,
  C18-1673JLR, 2019 U.S. Dist. LEXIS 10968
  (W.D. Wash. Jan. 23, 2019) ........................................................................................ 10

*In re Pola Mar., Ltd.*,
  CV416-333, 2017 U.S. Dist. LEXIS 138926 (S.D. Ga. August 29, 2017) ................ 10

*In re Procter & Gamble*,
  334 F. Supp. 2d 1112 (E.D. Wis. 2004) ...................................................................... 11

*RF Micro Devices, Inc. v. Xiang*,
  No. 1:12CV967, 2013 U.S. Dist. Lexis 196295
  (M.D.N.C. Nov. 4, 2013) ............................................................................................ 12

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Rigby*,
  No. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251
  (S.D. Cal. Feb. 19, 2013) .................................................................................. 5

*In re Servicio Pan Americano de Proteccion*,
  354 F. Supp. 2d 269 (S.D.N.Y. 2004) .......................................................... 8

*In re Top Matrix Holdings Ltd.*,
  18 Misc. 465 (ER), 2020 U.S. Dist. LEXIS 7896
  (S.D.N.Y. Jan. 16, 2020) ................................................................................ 7

*Vergara Hermosilla v. The Coca-Cola Co.*,
  717 F. Supp. 2d 1297 (S.D. Fla. 2010) ........................................................ 8

*In re XPO Logistics, Inc.*,
  15 Misc. 205 (LGS), 2017 U.S. Dist. LEXIS 203577
  (S.D.N.Y. Dec. 11, 2017) .............................................................................. 14

**Statutes**

28 U.S.C. § 1782 ................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 26 .............................................................................................. 16

*Nokia v Interdigital Technology Group*
  [2004] EWHC 2920 (Pat) ............................................................................. 10

*South Carolina Ins. Co. v. Assurantie Maatschappij De Zeven Provincien*
  *N.V.* [1987] 1 App. Cas. 24 ........................................................................... 9

tk-764200

Saint-Gobain Adfors S.A.S. ("Saint-Gobain") applies to the Court for an order under 28 U.S.C. § 1782 ("Section 1782") granting it leave to obtain limited discovery from 3M Company ("3M") for use in litigation between Saint-Gobain and 3M Innovative Properties Company ("3M IPC") in the United Kingdom.

## INTRODUCTION

Saint-Gobain seeks limited discovery for use in a patent invalidity proceeding in the High Court of Justice, Business and Property Courts of England and Wales ("UK Proceedings").  Specifically, Saint-Gobain will request that the High Court invalidate EP2373755B1, which relates to "Dish-Shaped Abrasive Particles with a Recessed Surface" and is owned by 3M IPC.  *See* Wilson Decl. Ex. B ("EP 755 Patent").  Through limited discovery of materials and records that 3M maintains, Saint-Gobain will establish that the alleged invention as claimed in the Patent is not patentable.

Congress has provided a statute—Section 1782—that makes the discovery procedures of the United States available in support of foreign court cases.  Saint-Gobain's application meets the statutory requirements of Section 1782, and the discretionary factors identified by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) weigh in favor of granting the application.

Section 1782 proceedings can be—and most often are—filed without notice to the respondents, and most discovery orders under Section 1782 are granted in *ex parte* proceedings.[1]  However, the next step in the process is typically a motion to quash the resulting subpoena for document production, requiring the Court to revisit the *ex parte* discovery order.  To make the most efficient use of the Court's time, Saint-Gobain is not seeking an *ex parte* order.  Rather, Saint-Gobain intends to serve this application on 3M by

---

[1] *See In re Letters Rogatory from Tokyo Dist., Tokyo, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (noting that Section 1782 applications are "customarily received and appropriate action taken with respect thereto *ex parte*," because "witnesses can . . . raise[] objections and exercise[] their due process rights by motions to quash the subpoenas.").

agreement or service of process and thereafter meet and confer to seek a stipulated briefing schedule and hearing date at the Court's convenience.

## BACKGROUND

Saint-Gobain is ultimately a wholly owned French subsidiary of Compagnie de Saint-Gobain S.A. Saint-Gobain's parent company was founded in 1665 under the name of Manufacture royale des glaces, in order to challenge Venice's supremacy in mirror making. From the 19th century onwards, the company diversified its activities, moving into chemicals, all types of glass products, and the automotive industry, and began its international expansion. It is now a leading innovator and manufacturer of construction, high-performance, and other materials.

Saint-Gobain offers comprehensive solutions for each stage of the abrasion, cutting, and polishing process. It serves a wide range of markets: construction and habitat (from rough cutting of concrete walls and floors to sanding of wooden floors and decorative finishes), heavy industry (steelworks, paper mills, and mineral extraction), and manufacturing and high-tech industries (automotive, aerospace, and electronics). Saint-Gobain leverages its expertise in ceramic grains and its in-depth knowledge of materials to design abrasives systems that are optimized for its customers' applications, from simple home improvement to highly technical precision engineering.

Founded in 1902 as the Minnesota Mining and Manufacturing Company, 3M offers a wide variety of products for industry, worker safety, healthcare, and consumer goods. In 1994, 3M was assigned a patent entitled "Abrasive Article Containing Shaped Abrasive Particles." *See* Wilson Decl. Exs. C & D (U.S. Patent No. 5,366,523, and its reissued patent, RE 35,570) ("The '523 Patent"). The '523 Patent as reissued expired on July 23, 2012.

On November 24, 2009, as the term of the '523 Patent neared expiration, 3M IPC filed for the EP 755 Patent. *See* Wilson Decl. Ex. B. The EP 755 Patent is not a new

invention. Rather, it is an attempt unlawfully to extend the period of monopoly of the invention of the '523 Patent.

Through the UK Proceedings, Saint-Gobain will establish that the EP 755 Patent is lacking in novelty (i.e. it was disclosed either in written or physical form before); lacking inventive step (i.e. it was obvious over what was known in the field); and/or insufficient (i.e. it was not fully described and containing enough information to allow someone skilled in the field to understand and work the invention without undue effort). (Wilson Decl. ¶¶ 11-14; *see also* Wilson Decl. Ex. A.) The EP 755 Patent does not disclose a patentable invention.

The requested discovery is relevant to the legal proceeding that Saint-Gobain has filed in the United Kingdom.

## ARGUMENT

## I.   LEGAL STANDARD

Congress enacted Section 1782 so that parties could obtain evidence in the United States relevant to foreign litigation. *See Intel*, 542 U.S. at 262.

Courts in this district routinely grant Section 1782 applications to obtain U.S.-style discovery for use in legal proceedings before foreign tribunals. *See, e.g., In re CA Inv. (Brazil) S.A.*, No. 19-mc-22 (MJD/SER), 2019 U.S. Dist. LEXIS 61060 (D. Minn. April 19, 2019); *In re Armcon Ltd.*, No. 18-mc-51 (JRT/TNL), 2018 U.S. Dist. LEXIS 119567 (D. Minn. July 18, 2018); *In re Canadian Private Copying Collective*, No. 11-MC-0028 (SRN/SER), 2011 U.S. Dist. LEXIS 47008 (D. Minn. April 14, 2011); *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951 (D. Minn. 2007).[2]

---

[2] While courts in the Eighth Circuit have decided fewer Section 1782 cases than in some other circuits, other district courts in the Eighth Circuit also routinely grant Section 1782 applications. *See, e.g., In re Kegel*, 67 F. Supp. 3d 1054 (D.N.D. 2014); *Consorcio Minero S.A. v. Doe Run Res. Corp.*, No. 4:11-MC-583 (CEJ), 2011 U.S. Dist. LEXIS 112414 (E.D. Mo. Sept. 30, 2011); *Gov't of Ghana v. ProEnergy Servs., LLC*, No.

*(footnote continued on following page)*

In this district, Saint-Gobain has identified only one application for discovery under Section 1782 that has ever been denied.  *See Andover Healthcare, Inc., v. 3M Co.*, No. 14-mc-44 (SRN/JJK), 2014 U.S. Dist. LEXIS 141605 (D. Minn. Oct. 6, 2014), *aff'd* 817 F.3d 621 (8th Cir. 2016).  The case is readily distinguishable.  Unlike here, the applicant had already sought the requested discovery from the same entity, which was a party in the German proceeding, before resorting to Section 1782.  Moreover, the applicant failed to establish that the German tribunal would respect the respondent's confidentiality concerns.

There are three statutory prerequisites for discovery pursuant to Section 1782: (1) the person from whom discovery is sought must reside or be found in the district where the application is made; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by the foreign tribunal or "any interested person."  28 U.S.C. §1782(a).  Once the statutory threshold requirements are met, a district court may order discovery pursuant to Section 1782, taking into consideration four discretionary factors, as set forth by the Supreme Court in the *Intel* case.  *In re CA Inv. (Brazil) S.A.*, 2019 U.S. Dist. LEXIS 61060 at *9.

The four *Intel* factors are:  (1) the foreign tribunal's ability to reach the evidence at issue; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to United States federal court judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the request is unduly intrusive or burdensome.  *Intel*, 542 U.S. at 264–65.  These factors are "nonexclusive," and a district

---

*(footnote continued from previous page)*
11-9002-MC-SOW, 2011 U.S. Dist. LEXIS 75029 (W.D. Mo. June 6, 2011), *aff'd* 677 F.3d 340 (8th Cir. 2012).

court is not "required to address explicitly every factor." *Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015).

In conducting this inquiry, recognizing that Congress intended Section 1782 to "substantially broaden[] the scope of assistance federal courts could provide for foreign proceedings," *Intel*, 542 U.S. at 247–48, courts interpret Section 1782 in light of policies "generally favor[ing] discovery." *In re Rigby*, No. 13cv0271-MMA (MDD), 2013 U.S. Dist. LEXIS 23251, at *6 (S.D. Cal. Feb. 19, 2013). Indeed, "allowance of liberal discovery seems entirely consistent with the twin aims of Section 1782: providing efficient assistance to participants in international litigation and encouraging foreign countries by example to provide similar assistance to our courts." *Advanced Micro Devices v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002) ("AMD"), *aff'd*, 542 U.S. 241 (2004).

Saint-Gobain's application meets the statutory requirements of Section 1782, and the discretionary factors strongly favor granting the requested discovery. Applying these factors and considering the overarching principles behind the statute, this Court should permit Saint-Gobain to obtain the discovery it seeks.

## II.     SAINT-GOBAIN MEETS SECTION 1782'S THRESHOLD REQUIREMENTS.

First, 3M Company is headquartered in St. Paul, Minnesota. Courts in this district recognize that a respondent is "found" in the district when it is headquartered here. *In re CA Inv. (Brazil) S.A.*, 2019 U.S. Dist. LEXIS 61060 at *9 ("Here, based on the record before the Court, U.S. Bank N.A. is headquartered in Minnesota and conducts its Global Corporate Trust Services from St. Paul, Minnesota, which is within the District of Minnesota").

Second, the discovery is sought for use in a proceeding before a tribunal in the United Kingdom. Although it has already done so, Saint-Gobain would not have had to commence the UK Proceedings before resorting to Section 1782 relief. As the United

States Supreme Court has recognized, the proceeding for which discovery is sought "must be within reasonable contemplation, but need not be 'pending' or 'imminent.'" *Intel*, 542 U.S. at 247.

Third, Saint-Gobain, as the plaintiff in the foreign proceeding, qualifies as an "interested party." As the Supreme Court stated, "no doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke section 1782." *Intel*, 542 U.S. at 256.

## III.   THE SUPREME COURT'S *INTEL* FACTORS STRONGLY FAVOR GRANTING SAINT-GOBAIN'S APPLICATION.

### A.   3M Is Not a Party to the Foreign Proceeding, and Limitations in the Foreign Court Procedural Rules Hamper the Foreign Tribunals' Ability to Reach the Evidence at Issue.

The first *Intel* factor considers "whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach." *In re Canadian Private Copying Collective*, 2011 U.S. Dist. LEXIS 47008, at *5. In the Eighth Circuit, district courts sometimes refer to this question as whether the target of discovery is a participant in the foreign proceeding. *In re CA Inv. (Brazil) S.A.*, 2019 U.S. Dist. LEXIS 61060, at *9 ("whether the person from whom discovery sought is a participant in the foreign proceeding"); *In re Armcon Ltd.*, 2018 U.S. Dist. LEXIS 119567, at *4 (same).

As courts have consistently recognized, simply because a respondent's corporate affiliate is a party to the foreign proceeding does not mean the respondent is a participant. *See, e.g., In re Application for an Order for Judicial Assistance in a Foreign Proceeding in the Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006) (finding first *Intel* factor favors discovery from McDonald's because "McDonald's is not a party in the Labor Court. Its wholly-owned subsidiary, McCal, is the party.").[3]

---

[3] *See also In re Barnwell Enters. Ltd*, 265 F. Supp. 3d 1, 10 (D.D.C. 2017) ("ECP is not a party in the foreign proceedings; its subsidiary, ECP Africa, is the relevant party. And

*(footnote continued on following page)*

Even if 3M were a party to the UK Proceedings, which it is not, this would not counsel against the grant of Section 1782 discovery. Though *Intel* counsels that the need for Section 1782 is generally not as clear when the discovery sought is from a party to the litigation, participation by the target of discovery in the foreign proceedings does not foreclose Section 1782 aid. Other courts have granted discovery—even from parties to the foreign litigation—notwithstanding that the foreign tribunals had "jurisdiction" over them and could theoretically order them to produce copies of the same documents. *See Akebia*, 793 F.3d at 1112 (affirming Section 1782 discovery from a party to a foreign patent proceedings).[4]

Moreover, "[w]here the foreign tribunal's procedural rules may not allow for the discovery sought, this factor militates *in favor* of granting § 1782 relief." *In re Macquarie Bank Ltd.*, No. 2:14-cv-0797-GMN-NJK, 2014 U.S. Dist. LEXIS 181626, at *6-7 (D. Nev. June 4, 2014) (granting Section 1782 petition from party to foreign

---

*(footnote continued from previous page)*

while Respondent now argues that seeking discovery from ECP in the United States is effectively the same as seeking discovery from ECP's foreign subsidiary in Mauritius . . . the Court finds Respondent's argument unavailing. ECP and ECP Africa, as Respondent acknowledges, are distinct legal entities."); *In re Top Matrix Holdings Ltd.*, 18 Misc. 465 (ER), 2020 U.S. Dist. LEXIS 7896, at *15 (S.D.N.Y. Jan. 16, 2020) (holding "[p]arent companies who are 'participants' to foreign proceedings are considered separate legal entities from their subsidiaries and affiliates for the purpose of Section 1782 motions."); *In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-MC-UNGARO/SIMONTON, 2011 U.S. Dist. LEXIS 5201, at *34-35 (S.D. Fla. Jan. 19, 2011) ("The undersigned rejects the notion that Exxon shares Esso's status as a participant in the Honduran proceedings; and, therefore, whether the Honduran courts (or criminal investigating authorities) are capable of asserting the authority necessary to require Esso to produce discovery is not relevant to the question of whether similar information might be obtainable from Exxon").

[4] *See also Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011) (reversing a district court's refusal to order discovery of documents from a company (Biomet) that was a participant in the foreign proceedings); *Cryolife, Inc. v. Tenaxis Med., Inc.*, No. C08-05124-HRL, 2009 U.S. Dist. LEXIS 3416, at *5-6 (N.D. Cal. Jan. 13, 2009) (granting Section 1782 discovery from a party to a foreign proceeding).

litigation) (emphasis added); [5] *In re IPCom GMBH & Co. KG*, No. 5:14-mc-80037 (EJD) (PSG), 2014 U.S. Dist. LEXIS 50746, at *6 (N.D. Cal. Apr. 10, 2014) (granting discovery from a party to German litigation, remarking that "German law does not provide parties with the far-reaching discovery available in the United States.").[6]

Here, the first *Intel* factor favors discovery. First, 3M is not a party to the foreign proceeding. Second, it is highly unlikely that the foreign tribunal would be able to force 3M to provide the evidence at issue. (Wilson Decl. ¶¶ 27-30.)[7]

---

[5] The court later granted the respondents' motion to quash the subpoena in view of subsequent events: the foreign court denied the petitioner's request for discovery, at the same time appointing a bailiff to collect such discovery, and the petitioner waited over three months to serve the subpoenas on the same day as its request before the foreign court was denied. *See In re Macquarie Bank Ltd.*, No. 2:14-cv-00797-GMN-NJK, 2015 U.S. Dist. LEXIS 72544, at *21-22 (D. Nev. May 28, 2015).

[6] *See also Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 913 (N.D. Cal. 2019) (petitioner could compel discovery even where respondent had been named a party in foreign proceedings, because petitioner presented evidence that German court could not order respondent to produce the information sought in application); *In re Lufthansa Technick AG*, No. C17-1453-JCC, 2019 U.S. Dist. LEXIS 12568, at *6-7 (W.D. Wash. Jan. 25, 2019) (holding "although Intervenor is a participant in the pending proceedings, the lack of effective discovery mechanisms available to Petitioner in those countries weighs in favor of allowing Petitioner to obtain the discovery material via § 1782."); *In re Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 274 (S.D.N.Y. 2004) ("While the first factor articulated by the Supreme Court, whether the entity from whom discovery is sought is a party to the foreign proceeding, counsels in favor of HSBC, the apparent limitations of Venezuelan discovery rules suggest that the exercise of jurisdiction by this Court may be necessary to provide Pan Americano with the documents it seeks."); *In re Ferrer*, No. 18-20226-CIV-O'SULLIVAN, 2018 U.S. Dist. LEXIS 111172, at *21 (S.D. Fla. July 3, 2018) ("Although the first *Intel* factor may weigh slightly in favor of Delcop and Vicente because they are parties to the Colombian Mercantile Case, the Applicants are permitted to seek discovery pursuant to Section 1782 because the Colombian Court lacks the power to compel discovery from Delcop and Vicente that is located outside of Colombia.").

[7] *See Vergara Hermosilla v. The Coca-Cola Co.*, 717 F. Supp. 1297, 1302, n.2 (S.D. Fla. 2010) ("When analyzing foreign law, district courts may rely on affidavits of foreign attorneys.").

Therefore, the first *Intel* factor weighs in favor of granting discovery.

### B.      Courts in the United Kingdom Are Receptive to U.S. Judicial Assistance.

The second *Intel* factor considers "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal court judicial assistance." *Intel*, 542 U.S. at 264. When evaluating this factor, courts look for "authoritative proof" that a foreign tribunal would *reject* evidence obtained with the aid of Section 1782. *In re Metallgesellschaft AG*, 121 F.3d 77, 80 (2d Cir. 1997) ("[A]bsent authoritative proof that a foreign tribunal would reject the evidence obtained . . . a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect.").[8]  This factor weighs strongly in favor of Saint-Gobain.

Courts in the United Kingdom have long expressed their receptivity to discovery obtained in the United States through Section 1782.  In *Intel*, the Supreme Court cited and described an English case in which the "House of Lords ruled that nondiscoverability under English law did not stand in the way of a litigant in English proceedings seeking assistance in the United States under § 1782." 542 U.S. at 262 (citing *South Carolina Ins. Co. v. Assurantie Maatschappij De Zeven Provincien N.V.* [1987] 1 App. Cas. 24).  In that case, the House of Lords, England's then highest judicial body,[9] expressly approved a private litigant's use of Section 1782 to gather evidence in the United States for use in English proceedings.  Lord Brandon stated:

---

[8] *See also In re CA Inv. (Brazil) S.A.*, 2019 U.S. Dist. LEXIS 61060 at \*10 ("There is no indication that any of the foreign proceedings would reject evidence obtained by CA Investment in the United States."); *In re Armcon Ltd.*, 2018 U.S. Dist. LEXIS 119567, at \*5 ("There is no indication that the EUIPO would reject evidence obtained by Armcon in the United States.").

[9] At the time, the highest appellate court in the United Kingdom was the House of Lords, which has since been replaced by the United Kingdom Supreme Court.

> I cannot see that the [defendants], by seeking to exercise a right potentially available to them under the federal law of the United States, have in any way departed from, or interfered with, the procedure of the English court. All they have done is what any party preparing his case in the High Court is entitled to do, namely to try to obtain in a foreign country, by means lawful in that country . . . evidence which they believe they need in order to prepare and present their case.

[1987] AC 24, 41-42 (Wilson Decl. Ex. K); *see also In re Pola Mar., Ltd.*, CV416-333, 2017 U.S. Dist. LEXIS 138926, *8 (S.D. Ga. August 29, 2017) ("case law demonstrates that the English courts have explicitly sanctioned § 1782(a) as an appropriate vehicle for propounding discovery.").

Likewise, in *Nokia v. Interdigital Technology Group* [2004] EWHC 2920 (Pat), the High Court of England & Wales (Patents Court), in a patent revocation action, confirmed, specifically in relation to evidence obtained through the Section 1782 procedure, that "the [United Kingdom] court is generally indifferent as to the source of admissible material," and "the [United Kingdom] court is not generally concerned as to how that evidence was obtained." *Id.* ¶¶ 23-24 (Wilson Decl. Ex. L).

Accordingly, federal courts around the country have routinely granted Section 1782 applications for discovery for use in proceedings in the United Kingdom. *See, e.g., In re Novoship (UK) Ltd.*, 20-60876-MC-ALTMAN, 2020 U.S. Dist. LEXIS 107257 (S.D. Fla. June 17, 2020) (granting application for discovery for use in civil proceeding pending before the English High Court).[10]

---

[10] *See also In re Piraeus Bank*, No. 20-mc-210 (RA), 2020 U.S. Dist. LEXIS 87406 (S.D.N.Y. May 18, 2020) (granting application for discovery for use in civil proceeding pending before the English High Court Queen's Bench Division of the High Court of Justice); *Eurasian Natural Res. Corp. v. Simpson*, No. 8:19-mc-00699-PX, 2020 U.S. Dist. LEXIS 1507 (D. Md. Jan. 6, 2020) (granting application for discovery to be used in a lawsuit in the United Kingdom); *In re PJSC Uralkali*, C18-1673JLR, 2019 U.S. Dist. LEXIS 10968 (W.D. Wash. Jan. 23, 2019) (granting application for discovery for use in the High Court of Justice, Business and Property Courts of England and Wales); *In re Godfrey*, No. 17-21631-CV-COOKE/GOODMAN, 2018 U.S. Dist. LEXIS 29794 (S.D. Fla. Feb. 22, 2018) (granting application for discovery for use in action in the United

*(footnote continued on following page)*

In sum, the second *Intel* factor strongly weighs in favor of granting discovery.

### C.     No Foreign Restrictions Bar Saint-Gobain's Requested Discovery.

Section 1782 does not require that the discovery sought be discoverable in the foreign courts.  But, under the third *Intel* factor, district courts can consider whether the applicant is seeking in bad faith "to circumvent the foreign proof-gathering restrictions or other policies of a foreign country or the United States."  *Intel*, 542 U.S. at 260–65. Circumvention occurs, however, only if the "request would undermine a specific policy of a foreign country or the United States."  *In re Procter & Gamble*, 334 F. Supp. 2d 1112, 1116 (E.D. Wis. 2004); *Mees v. Buiter*, 793 F.3d 291, 303, n.20 (2d Cir. 2015) ("'[P]roof-gathering restrictions' are best understood as rules akin to privileges that *prohibit* the acquisition or use of certain materials, rather than as rules that *fail to facilitate* investigation of claims by empowering parties to require their adversarial and nonparty witnesses to provide information.").  "Seeking more discovery than [foreign] discovery procedures allow does not circumvent [foreign] law."  *In re Joint Stock Co. Raiffeisenbank*, No. 16-mc-80203-MEJ, 2016 U.S. Dist. LEXIS 152090, at *19 (N.D. Cal. Nov. 2, 2016).

---

*(footnote continued from previous page)*

Kingdom); *In re Koninklijke Philips N.V.*, No. 17-MC-1681-WVG, 2018 U.S. Dist. LEXIS 14995 (S.D. Cal. Jan. 30, 2018) (granting application for discovery for use in the High Court of Justice of England and Wales); *LEG Q LLC v. RSR Corp.*, No. 3:17-cv-1559-N-BN, 2017 U.S. Dist. LEXIS 140280 (N.D. Tex. Aug. 31, 2017) (granting application for discovery for use in the English High Court); *In re Giorgio Armani S.P.A.*, No.17-mc-80067-HRL, 2017 U.S. Dist. LEXIS 83512 (N.D. Cal. May 31, 2017) (granting application for discovery for use in the High Court of Justice in England); *In re Glob. Energy Horizons Corp.*, No. 17-mc-80009-JSC, 2017 U.S. Dist. LEXIS 19511 (N.D. Cal. Feb. 10, 2017) (granting application for discovery for use in the English High Court of Justice, Chancery Division); *In re Cohen*, 16-MC-2947 (MKB), 2016 U.S. Dist. LEXIS 169622 (E.D.N.Y. Dec. 6, 2016) (granting application for discovery for use in the English High Court of Justice, Chancery Division).

And, as discussed further below, an applicant does not have to first attempt to obtain the evidence at issue in the foreign jurisdiction before resorting to Section 1782. In fact, doing so could doom the application. Courts have held that a failed attempt to obtain the evidence abroad before resorting to Section 1782 relief can weigh against granting the application. *See, e.g., In re Kurbatova*, No. 18-MC-81554, 2019 U.S. Dist. Lexis 84030, at *4 (S.D. Fla. May 20, 2019) ("The Court, however, is hesitant to utilize its broad discretion afforded to it by § 1782, where it appears that the Applicant is attempting to obtain discovery that she was already denied by the foreign tribunal."); *RF Micro Devices, Inc. v. Xiang*, No. 1:12CV967, 2013 U.S. Dist. Lexis 196295, at *9 (M.D.N.C. Nov. 4, 2013) (same).

1.       **The foreign courts' broad receptivity to evidence, despite more limited discovery procedures, make the third *Intel* factor weigh in favor of discovery.**

If no specific policy of the foreign jurisdiction is undermined, a foreign court's receptivity to evidence, despite more limited discovery procedures, militates *in favor of* granting discovery under this factor. *In re Macquarie*, 2014 U.S. Dist. LEXIS 181626, at *7–8 ("Where foreign countries have adopted limited discovery rules but allow parties to use broader discovery obtained pursuant to § 1782, [the third *Intel*] factor militates *in favor of* granting § 1782 relief.") (emphasis added).

In *Intel*, the Supreme Court held that Section 1782 does not impose a "foreign discoverability" requirement on applicants. *Intel*, 542 U.S. at 260–61. In other words, the fact that the discovery may be unavailable in the foreign jurisdiction does not weigh against granting the application. *Id.* at 260 (holding that, absent a claim of privilege, Section 1782 does not "limit[] a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there").

To the contrary, following *Intel*, courts look favorably on requests that reflect reasonable efforts to overcome technical discovery limitations of the foreign tribunal.

*See In re Microsoft Corp.*, No. C10-0170MJP, 2010 U.S. Dist. LEXIS 145423, at *6
(W.D. Wash. Aug. 18, 2010) ("The Court thus rejects Microsoft's suggestion that the
material sought must be discoverable in the foreign proceeding."); *Cryolife, Inc.*, 2009
U.S. Dist. LEXIS 3416, at *10 ("The mere fact that the discovery is unavailable under
foreign law is not a basis for denying its application."). Indeed, "in some respects, that is
precisely the type of assistance that the statute was designed to afford." *In re Bloomfield
Inv. Res. Corp.*, No. 18 MC 2608 (NGG) (CLP), 2018 U.S. Dist. LEXIS 206338, at *16
(E.D.N.Y. Dec. 6, 2018) (citations omitted).

Here, Saint-Gobain is not circumventing foreign discovery procedures. The
discovery Saint-Gobain seeks is common in American courts but not comparable to the
limited discovery available in the United Kingdom. (Wilson Decl. ¶¶ 26-42.) That
Saint-Gobain would not be able to obtain the documents and physical inspection that it
seeks under foreign procedures does not bar this Court from granting the application, as
the English Court is receptive to Section 1782-obtained evidence, and there are no
policies against its admission. (Wilson Decl. ¶¶ 43-49.) On the contrary, the foreign
courts' limited discovery procedures make this factor weigh in favor of granting the
discovery Saint-Gobain seeks. *See In re Macquarie*, 2014 U.S. Dist. LEXIS 181626, at
*7–8.

This application is a good faith attempt to utilize "our generous discovery
provisions" to assist Saint-Gobain in the foreign action, where it "cannot obtain even
remotely comparable discovery" by utilizing the foreign procedures. *Heraeus Kulzer,
GmbH*, 633 F.3d at 594.

## 2.     There is no exhaustion requirement.

Nor does Saint-Gobain have to first try to obtain the requested discovery from 3M
IPC (or 3M) in the foreign jurisdiction. The Eighth Circuit has expressly rejected a
"quasi-exhaustion requirement" mandating that parties seek discovery in a foreign court

before moving for assistance from the United States court.  *Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 345 (8th Cir. 2012) ("there is no exhaustion requirement under § 1782 that would require it to seek discovery of the documents in the foreign forum before asking for the assistance of a district court.").[11]

In sum, the third *Intel* factor strongly favors granting discovery, because Saint-Gobain's request does not undermine any policy of the foreign jurisdiction.  And, because the United Kingdom has "adopted limited discovery rules but allow parties to use broader discovery obtained pursuant to § 1782, [the third *Intel*] factor militates in favor of granting § 1782 relief."  *In re Macquarie*, 2014 U.S. Dist. LEXIS 181626, at *7-8.

### D.    Saint-Gobain's Request Is Not Unduly Burdensome.

The fourth *Intel* factor analyzes whether the discovery request is "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  This factor is evaluated under "the familiar standards of Rule 26 of the Federal Rules of Civil Procedure."  *Mees*, 793 F.3d at 302; *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 192 (3d Cir. 1999) ("[S]ection 1782 . . . incorporates by reference the scope of discovery permitted by the Federal Rules of Civil Procedure."); *In re XPO Logistics, Inc.*, 15 Misc. 205 (LGS), 2017 U.S. Dist. LEXIS

---

[11] *See also In re Bayer AG*, 146 F.3d 188, 195-96 (3d Cir. 1998) ("Other courts have held that even when the requested documents may be available in the foreign jurisdiction, there is no requirement to first seek discovery from the non-US tribunal or exhaust other options before applying to a district court for § 1782 discovery. . . . We too decline to adopt such a requirement."); *In re Malev Hungarian Airlines*, 964 F.2d 97, 100-101 (2nd Cir. 1992) (rejecting a "quasi-exhaustion requirement" because "requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782 . . . . It would undermine the policy of improving procedures for assistance to foreign and international tribunals by imposing an additional burden on persons seeking assistance from our federal courts for matters relating to international litigation. Additionally, it would undermine the policy of prompting foreign courts to act similarly based on our own generous example.").

203577, at *12 (S.D.N.Y. Dec. 11, 2017) (holding that the fourth *Intel* factor is evaluated "with the factors enumerated in [Rule 26]").

Saint-Gobain's discovery requests are not unduly burdensome or intrusive. Saint-Gobain seeks three limited categories of information.  (Wilson Decl. ¶ 15.)  First, Saint-Gobain seeks to inspect certain abrasive particles that are maintained by 3M in Minnesota.  Second, Saint-Gobain seeks certain documents relating to the research underlying the '523 Patent.  Third, Saint-Gobain seeks certain documents relating to the research underlying the EP 755 Patent.  All of the information that Saint-Gobain seeks goes to the heart of the question of whether the EP 755 Patent is, in fact, patentable and would impose a monopoly on the claimed invention.  (Wilson Decl. ¶¶ 16-25.)

Moreover, Saint-Gobain is prepared to meet and confer with 3M's attorneys to discuss ways of obtaining the relevant information as efficiently and with as little burden as possible.  To the extent, after engaging in the meet and confer process, 3M believes the requests would impose a burden, it can seek further relief from the Court.

## IV.   A PROTECTIVE ORDER WILL ADDRESS ANY POTENTIAL CONFIDENTIALITY CONCERNS.

While Saint-Gobain does not believe that the discovery sought will implicate serious trade secret or other confidentiality concerns, Saint-Gobain is also prepared to meet and confer with 3M's attorneys to discuss any concerns that 3M may have and how they could be alleviated through a protective order in this matter.[12]  Section 1782 specifically provides that any "order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the

---

[12] As a starting point, Saint-Gobain is prepared to use the model protective order provided in this district.  *See* https://www.mnd.uscourts.gov/local_rules/forms/Stipulation-for-Protective-Order-Form.pdf.

international tribunal, for taking the testimony or statement or producing the document or other thing [,and to] the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." 28 U.S.C. § 1782(a). The Federal Rules of Civil Procedure specifically provide for the issuance of protective orders. Fed. R. Civ. P. 26(c). Courts, therefore, often grant Section 1782 requests and require the parties to negotiate an appropriate protective order. *See, e.g., Gov't of Ghana*, 2011 U.S. Dist. LEXIS 75029.

And courts in the United Kingdom protect confidential evidence consistent with the terms of stipulated protective orders. (Wilson Decl. ¶¶ 50-54.) Courts in the United Kingdom further permit holding certain parts of public proceedings in private and will, upon request from the parties, guard the confidentiality of materials submitted to the courts. (Id.)

## CONCLUSION

Saint-Gobain seeks limited discovery for use in proceedings in the United Kingdom. Saint-Gobain's application meets the statutory requirements of 28 U.S.C. § 1782, and the discretionary factors the Supreme Court identified in the *Intel* case all weigh in favor of granting the application. Accordingly, Saint-Gobain respectfully requests that this Court grant its application and issue the proposed order lodged with this Court, requiring 3M to respond to the subpoena attached as Exhibit A to the Application.

Dated:  July 2, 2020

**CARLSON, CASPERS, VANDENBURGH & LINDQUIST, PA**

By:   /s/ *Tara C. Norgard*
        Tara C. Norgard (MN Bar No. 307683)
        Capella Tower, Suite 4200
        225 South Sixth Street
        Minneapolis, MN 55402
        Telephone:  (612) 436-9600
        Facsimile:  (612) 436-9605
        Email:  TNorgard@carlsoncaspers.com

**MORRISON & FOERSTER LLP**

Jack W. Londen (*Pro Hac Vice Pending*)
425 Market Street
San Francisco, California 94015-2482
Telephone:  (415) 268-7000
Facsimile: (415) 268-7522
Email:  JLonden@mofo.com

J. Alexander Lawrence (*Pro Hac Vice Pending*)
Shin-Marunouchi Building, 29th Floor
5-1, Marunouchi 1-Chome
Chiyoda-ku, Tokyo 100-6529, Japan
Telephone:  81 3 3214 6522
Facsimile:  81 3 3214 6512
Email:  ALawrence@mofo.com

**Attorneys for Saint-Gobain Adfors S.A.S.**