UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Saint-Gobain Adfors S.A.S.,            No. 0:20-mc-00052-MJD-KMM

      Petitioner,

v.                                     **ORDER**

3M Company,

      Respondent.

---

This matter is before the Court on the application of Saint-Gobain Adfors S.A.S. ("Saint-Gobain") to take discovery in aid of a foreign proceeding pursuant to 28 U.S.C. § 1782. [ECF No. 1.] Saint-Gobain is the plaintiff in a lawsuit pending in the United Kingdom. In the UK proceedings, Saint-Gobain seeks to invalidate a European patent held by Respondent 3M Company's ("3M") wholly-owned subsidiary, 3M Innovative Properties Company ("3M IPC"). In its § 1782 petition, Saint-Gobain seeks permission to serve a subpoena on 3M to obtain evidence for use in the UK proceedings. For the reasons that follow, Saint-Gobain's application is denied.

**I.  BACKGROUND**

Saint-Gobain and 3M compete in the abrasive-materials industry. 3M IPC is an intellectual property holding company and shares physical space in St. Paul with its corporate parent, 3M. [Erickson Decl. ¶ 4, ECF No. 26.] Until 2012, 3M held a United States Patent for abrasive particles, also known as the "Rowenhorst Patent." [Wilson Decl., Exs. C (U.S. Patent No. 5,366,523) & D (Reissue Patent No. 35,570), ECF No. 4.] 3M IPC currently holds a European patent—EP2373755B1 ("EP-755")—covering dish-shaped abrasive particles. [*Id.*, Ex. B.] 3M asserts that EP-755 builds on some of the earlier discoveries disclosed in the Rowenhorst Patent. [*Id.*, Ex. B at ¶ 0003.] According to 3M, EP-755 reflects more recent innovations regarding the abrasive qualities of particles with concave, rather than flat, surfaces. [*Id.*, Ex. B at ¶ 0004.]

1

Saint-Gobain recently filed a lawsuit in the High Court of Justice, Business and Property Courts of England and Wales, seeking to invalidate EP 755. [Wilson Decl., Ex. A.] Essentially, Saint-Gobain seeks to persuade the UK Court that EP 755 should not have been issued because it is an improper attempt to extend the Rowenhorst Patent, it does not disclose a novel invention, and it lacked a sufficient explanation for someone skilled in the field to understand and work with the alleged invention. [Wilson Decl. ¶¶ 11–14.]

The day after Saint-Gobain filed the UK lawsuit, it filed its § 1782 petition in this Court seeking discovery from 3M. [Wilson Decl., Ex. A; Pet., ECF No. 1.] 3M is not a party to the UK proceedings, it has agreed to be bound by any order regarding discovery issued by the UK Court as though it were a party. [3M's Resp. at 1, ECF No. 24; *see also* Reichel Decl., Ex. 1 & Ex. 2 at 1, ECF No. 25; Erickson Decl. ¶ 8.] 3M will also provide documents and other materials to 3M IPC for inspection and copying if 3M IPC asks for that information. [Erickson Decl. ¶ 7.]

Although § 1782 proceedings are often handled *ex parte* in the first instance, with a subpoena respondent later raising any disputes by filing a motion to quash, Saint-Gobain provided notice of its petition ahead of time to promote a more efficient resolution of their disagreements. [Saint-Gobain Mem. at 1, ECF No. 3.] In its opposition, 3M raises concerns regarding the scope of Saint-Gobain's subpoena, which seeks evidentiary materials related to the Rowenhorst Patent and EP-755 in seven requests for production spanning three pages. [3M's Resp., ECF No. 24; Subpoena, ECF No. 1-1.] The evidence sought by Saint-Gobain includes: particle samples; technical drawings, specifications, and inventor notebooks; sales and use documents; and manufacturing and testing documentation. 3M notes that some of these documents are many years old, are not relevant to the questions before the UK court in the invalidity litigation, may implicate material protected by the attorney-client privilege, and would require disclosure of closely guarded trade secrets. [*See generally* Erickson Decl. ¶¶ 11–21.]

## II.   LEGAL STANDARD

Under 28 U.S.C. § 1782, a federal court may order a person residing within its district to produce documents or other items for use in a proceeding in a foreign tribunal. To obtain an order authorizing discovery under § 1782, four statutory elements must be satisfied:

> 1) the person from whom discovery is sought "resides or is found" in the district where the court sits; 2) the request seeks evidence ... "for use in a proceeding in a foreign or international tribunal"; 3) the request is made ... by "any interested person"; and 4) the material sought is not protected by "any legally applicable privilege."

*In re Schlich*, 893 F.3d 40, 46 (1st Cir. 2018). "The statute authorizes, but does not require, a federal district court to provide assistance" to discovery in connection with the foreign proceeding. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). Even when the statutory elements are satisfied, a court should consider additional factors to determine whether to authorize a request for discovery. *Andover Healthcare, Inc. v. 3M Co.*, Civil No. 14–mc–44 (SRN/JJK), 2014 WL 4978476 (D. Minn. Oct. 6, 2014), *aff'd* 817 F.3d 621 (8th Cir. 2016); *see also Akebia Therapeutics, Inc. v. Fibrogen, Inc.*, 793 F.3d 1108, 1112 (9th Cir. 2015) (noting that the factors set forth in *Intel* are not an exclusive list). The non-exhaustive factors identified by the Supreme Court include:

> (1) the connection of the person from whom discovery is sought to the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the foreign entity to assistance; (3) whether the request is an attempt to circumvent foreign restrictions or policies; and (4) whether the request is "unduly intrusive or burdensome."

*Andover*, 2014 WL 4978476 (citing *Intel*, 542 U.S. at 264–65). Courts apply the factors flexibly, as they involve similar concerns; none of the factors, standing alone, categorically requires a request for discovery to be allowed or rejected. *In re Action & Prot. Found.*, No. C 14-80076 MISC EMC (LB), 2014 WL 2795832, at *5 (N.D. Cal. June 19, 2014) ("The *Intel* factors involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives.").

## III.   DISCUSSION

As explained below, because § 1782's statutory factors are met, the Court has the authority to allow Saint-Gobain to pursue discovery from 3M. However, applying the *Intel* factors to the unique circumstances of this case, the Court concludes that Saint-Gobain's application should be denied.

### A. Statutory Factors

There is no dispute in this case that the statutory factors have been established. 3M resides in the District of Minnesota, Saint-Gobain's petition seeks evidence for use in a proceeding in a foreign tribunal, and because it is the plaintiff in the UK proceedings, Saint-Gobain is an interested person within the meaning of § 1782. Although 3M suggests that some of the requests in Saint-Gobain's proffered subpoena could implicate information protected by the attorney-client privilege, and § 1782 contains express language excluding such material from its reach, 3M does not claim that the subpoena *only* requests privileged information. [3M's Resp. at 7–8 (suggesting that a subset of the information sought in Requests 6 and 7 are protected by attorney-client privilege or the work-product doctrine), ECF No. 24.]

### B. Discretionary Considerations

Although these statutory factors must be met before a § 1782 petition could be granted, satisfying them does not entitle a petitioner to obtain discovery through a subpoena. *Intel*, 542 U.S. at 264 ("[A] district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so."). In determining whether to allow discovery here, the Court considers the *Intel* factors and the unique circumstances of this case. For several reasons, the Court finds that the considerations set forth in *Intel* and its progeny weigh against granting a § 1782 subpoena.

First, the Court finds that 3M's connection to the foreign proceeding weighs significantly against Saint-Gobain's request. *Andover*, 2014 WL 4978476 (noting that a court should consider the subpoena's target's connection to the foreign proceeding). In *Intel*, the Court noted that when the person from whom discovery is sought is a party to the foreign proceeding, the need for discovery under § 1782 is diminished. 542 U.S. at 264. The Supreme Court also considered it relevant that a nonparticipant in a foreign proceeding "may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id.*

Here, there is no indication that the evidence 3M may possess would be unobtainable by Saint-Gobain absent § 1782 aid. Although not a party to the UK proceedings, 3M has a strong connection to Saint-Gobain's invalidity case. 3M is the parent company of 3M IPC,

4

the two companies share a campus in St. Paul, and 3M received Saint-Gobain's discovery application before 3M IPC was even served with the UK pleadings. 3M has already agreed to voluntarily provide some information to Saint-Gobain in connection with the UK proceedings, subject to confidentiality protections that the UK Court deems appropriate. [Erickson Decl. ¶¶ 9–10; Reichel Decl., Ex. 1.] And 3M has agreed to subject itself to the authority of that court during the discovery process, as though it were itself a party. Pursuant to its representation before this Court and to Saint-Gobain, 3M agrees to be bound by the UK Court's delineation of relevance and proportionality.

This is a situation in which 3M's information is not beyond the foreign tribunal's jurisdictional reach. 3M's representation that it will abide by any discovery order issued by the UK Court means that Saint-Gobain will not be stuck without the evidence it needs. Moreover, the judicial authority that is most familiar with the discovery needs of the UK proceedings, the UK Court itself, will be able to draw appropriate lines regarding the information Saint-Gobain needs to investigate and litigate its case. Other cases with comparable facts have similarly found that the first *Intel* factor weighs against a § 1782 discovery request when the foreign jurisdiction can access the information at issue. *See In re Appl. Pursuant to 28 U.S.C. § 1782 of Michael Page do Brasil Ltda.*, No. CV 1704269 (KM), 2018 WL 7018716, at *4 (D.N.J. Jan. 19, 2018), *R&R adopted*, No. CV 17-4269-KM-JBC, 2019 WL 168828 (D.N.J. Jan. 10, 2019) (focusing on "whether the material is obtainable through the foreign proceeding" rather than on the identity of the "person" from whom the discovery is sought); *see also In re Judicial Assistance Pursuant to 28 U.S.C. 7182 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *6–7 (D. Nev. May 28, 2015) (noting the cooperation between the party to the foreign proceedings and the respondent to the § 1782 application).

Saint-Gobain argues that because 3M IPC, and not 3M itself, is the party to the UK proceedings, the first *Intel* factor supports its application, focusing on the fact that they are not the same legal entity. Some cases in this area have noted the legal distinctions between corporate parents and their subsidiaries and found separate corporate identities significant when examining the discovery target's relationship to the foreign proceeding. *See, e.g., In re Barnwell Enters., Ltd.*, 265 F. Supp. 3d 1, 10 (D.D.C. 2017) (noting that a corporate parent and its subsidiary are "distinct legal entities" in determining that the first factor supported a § 1782 discovery to the corporate parent). However, such decisions are readily

5

distinguishable from the unique situation before this Court, which involves a promise of cooperation between the corporate parent and its subsidiary regarding discovery. *See id.* (suggesting that there was no "reason to believe … that evidence in [the corporate parent's] possession is obtainable in the [foreign] proceedings … absent a section 1782 request."); *In re Order for Labor Court of Brazil*, 466 F. Supp. 2d 1020, 1031 (N.D. Ill. 2006) (rejecting corporate parent's argument that it should be considered a "participant" in Brazilian litigation against its subsidiary where it failed to show that the foreign court could order it to respond to discovery). And, in fact, the case law considering corporate parents and subsidiaries does not uniformly consider companies' distinct legal status to weigh in favor of granting an interested party's petition. *See, e.g.*, *Michael Page*, 2018 WL 7018716, at *4 ("This factor militates against allowing § 1782 discovery when the petitioner effectively seeks discovery from a participant in the foreign tribunal even though it is seeking discovery from a related, but technically distinct entity.") (quoting *In re Judicial Assistance Pursuant to 28 U.S.C. 7182 by Macquarie Bank Ltd.*, No. 2:14-CV-00797-GMN, 2015 WL 3439103, at *6 (D. Nev. May 28, 2015), and citing other cases). Under these circumstances, the corporate distinction between 3M and its subsidiary does not tip the scales on the first *Intel* factor.

Although the first *Intel* factor is perhaps the most critical in this case, the Court finds that the remaining three *Intel* factors do not weigh in Saint-Gobain's favor. *See In re Action & Prot. Found.*, No. C 14-80076 MISC EMC (LB), 2014 U.S. Dist. LEXIS 84333, at *14 (N.D. Cal. June 19, 2014) ("The *Intel* factors involve overlapping considerations, are considered collectively by the court in exercising its discretion, and are not stand-alone categorical imperatives."). The inquiries posed by the second, third, and fourth *Intel* factors largely converge into the following conclusions: (1) nothing in the record suggests that Saint-Gobain will be unable to litigate its case if discovery is managed by the UK Court and its § 1782 request is denied; and (2) it would be more efficient for the UK Court to make the discovery- and case-management decisions that will lead to a resolution of the parties' dispute over the validity of EP 755.

Under the second *Intel* factor, the Court considers the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the foreign court to receiving assistance. *See Andover*, 2014 WL 4978476 (discussing the second *Intel* factor). The parties have submitted competing declarations regarding the intricacies of the discovery law applicable in the foreign court. And neither side's declaration suggests that the UK Court

would refuse to consider information obtained from 3M pursuant to a § 1782 request. [Wilson Decl. ¶¶ 26–42; Ashby Decl. ¶¶ 26–45.] Although that fact does not itself weigh against Saint-Gobain's request, this does not end the inquiry. *See In re Application of Gilead Pharmasset LLC*, C.A. No. 14-mc-243 (GMS), 2015 WL 1903957, at *3 (D. Del. Apr. 14, 2015) (finding the respondent did not meet its burden to show that a foreign court would be unreceptive to § 1782 judicial assistance, but denying the petition for other reasons).

Here, the parties' declarations also indicate that documents the UK Court deems relevant and proportional to the needs of the invalidity case can, indeed, be obtained from 3M as part of those proceedings. This is especially true given 3M's willingness to cooperate with any discovery orders directing 3M IPC to provide information as though 3M itself were a party to the case. Indeed, the parties' evidence shows that the UK Court has the ability to reach information within 3M IPC's "control," which includes consideration of whether a party in the UK Court can access and inspect information that is possessed by a non-participant. [*Compare* Ashby Decl. ¶ 26–29 (discussing the UK Court's ability to reach documents within 3M IPC's control and analyzing a UK legal decision regarding the same), *with* Wilson Decl. ¶ 27 (noting that the UK Court may consider documents to be within a party's "control" where it has the consent of a third party to inspect documents and take copies).] Contrary to Saint-Gobain's contention that there is no evidence to suggest that 3M's documents may be treated as within 3M IPC's "control" for purposes of the UK proceedings, 3M has agreed to place its information squarely within its subsidiary's reach.

The analysis of this factor also cannot overlook that the United Kingdom's courts are sophisticated tribunals that are entirely capable of managing the propriety of discovery requests and facilitating the exchange of information necessary for their own litigation. Saint-Gobain's apparent preference for American-style discovery does not convince this Court that it should make its own determinations about what information will be useful in the foreign lawsuit. In short, the UK Court is in a better position to determine the proper scope of discovery in Saint-Gobain's invalidity case, and under the unique facts of this case, nothing prevents it from doing so.

The same result is required when the focus is on the "character" of the litigation between Saint-Gobain and 3M IPC and the receptivity of the UK Court to the evidence Saint-Gobain seeks from 3M in its § 1782 application. Although the validity of U.S. patents

is frequently litigated in federal court and there are similarities between the American and the European patent systems, patent litigation is among the more complex and nuanced areas of law that courts anywhere face. Drawing discoverability lines based on relevance and proportionality in such cases is most efficiently accomplished where a court has an intimate familiarity with and control over the proceedings, and an understanding of the relevant legal standards. It would be inefficient for this Court to attempt to define the parameters of discovery related to a case challenging the validity of a European patent given this Court's lack of comparable familiarity with the applicable patent laws and the parties' competing views regarding the proper scope of discovery. Courts are, indeed, cautioned against "speculative forays into legal territories unfamiliar to federal judges" when assessing § 1782 applications. *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995). Here, the UK Court is certainly better equipped to evaluate the proper scope of discovery regarding Saint-Gobain's challenge to EP-755's validity. It would similarly be inefficient to allow Saint-Gobain to serve its subpoena and then later attempt to resolve the parties' disputes through a motion to quash that 3M would presumably be entitled to pursue.[1]

These observations apply with equal or greater force to the fourth *Intel* factor, which focuses on whether the discovery sought is unduly intrusive or burdensome. Saint-Gobain's proposed subpoena to 3M is, on its face, expansive. It seeks information that is both intrusive and will be burdensome for 3M to collect. The subpoena includes no date limitations and the information concerning the Rowenhorst Patent goes back many years,

---

[1] During oral argument, Saint-Gobain asserted that allowing it to serve the subpoena on 3M would not necessarily subject 3M to any significant burden because counsel for the parties could appropriately narrow the scope of the subpoena through the familiar meet-and-confer process typically engaged in under the Federal Rules of Civil Procedure. Saint-Gobain suggested that such a collaborative process would be unheard of among attorneys in UK litigation. But nothing in the record suggests that parties to a UK lawsuit are prohibited from working cooperatively on discovery issues. 3M has already exhibited a willingness to work cooperatively with Saint-Gobain and promised to provide certain requested information subject to reasonable confidentiality provisions to be established by the UK Court. Moreover, at least with respect to the service of subpoenas under Fed. R. Civ. P. 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Thus, the subpoena itself should not function as merely the first step in a negotiation, but a targeted attempt to get the information that is truly needed from a nonparty.

8

which will likely make it challenging to collect. It is difficult to fathom that the full universe of information Saint-Gobain seeks in the subpoena would be necessary to proving its invalidity claims in the UK proceedings. Saint-Gobain's requests also implicate 3M's concerns regarding commercially sensitive business information and even its trade secrets. [Erickson Decl. ¶¶ 16–20.] Whether the intrusiveness and burdens imposed by the subpoena are truly undue is a decision that is better left to the UK Court, as is the management of the confidentiality concerns at play. There is no question that the sometimes vexing and always case-specific considerations of relevance and proportionality are among the determinations this Court frequently makes. However, Saint-Gobain does nothing to demonstrate that the UK Court is unable to draw the appropriate lines in this case. The parties' views regarding the nuances of UK discovery policies and European patent law will be better addressed by the court that is more familiar with those issues.

Finally, the third *Intel* factor—whether the request is an attempt to circumvent restrictions on discovery imposed by foreign policies or decisions—does not weigh in Saint-Gobain's favor. Saint-Gobain, relying on *In re Proctor & Gamble*, 334 F. Supp. 2d 1112 (E.D. Wis. 2004), argues that the fact that the discovery sought might not be available in the foreign jurisdiction cannot be a reason to deny a § 1782 request. [*See* Saint-Gobain Reply at 12–13.] Indeed, the *Proctor & Gamble* court suggested that the *Intel* Court had reached the same conclusion. 334 F. Supp. 2d at 1115–16 ("However, in *Intel*, the Supreme Court rejected a categorical foreign discoverability requirement; thus, the mere fact that P&G seeks discovery that is unavailable under foreign law is not a basis for denying its application.") (citing *Intel*, 542 U.S. at 259–63). However, this Court disagrees with the *Proctor & Gamble* court's characterization of *Intel* on this point. While it is clear that the *Intel* Court said that foreign unavailability should not be treated as a categorical basis to reject a request under § 1782, the Court recognized that concerns raised by non-discoverability of evidence in the foreign forum, including considerations of "comity and parity," could be "important as touchstones for a district court's exercise of discretion in particular cases…." *Intel*, 542 U.S. at 261; *see also id.* at 264 ("Further, the grounds Intel urged for categorical limitations on § 1782(a)'s scope may be relevant in determining whether a discovery order should be granted in a particular case."). The fact that Saint-Gobain may be attempting to obtain here something that it could not obtain through discovery in the UK litigation is certainly a relevant consideration that cuts against its § 1782 petition.

9

In this case, Saint-Gobain's nearly immediate attempt to obtain § 1782 discovery from 3M before engaging the discovery process available in the UK proceedings suggests that it is trying to obtain a greater scope of discovery here than would be permitted by the UK Court. Saint-Gobain is correct that it is not required to show that it has exhausted its efforts to obtain the discovery in the foreign tribunal prior to applying for discovery under section 1782. *See Gov't of Ghana v. ProEnergy Servs., LLC*, 677 F.3d 340, 345 (8th Cir. 2012) ("Ghana is correct that there is no exhaustion requirement under § 1782 that would require it to seek discovery of the documents in the foreign forum before asking for the assistance of a district court.") (citing *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)). Nor is Saint-Gobain required to show that the information it seeks is, in fact, discoverable under the laws of the foreign jurisdiction to properly resort to the statute. *See Intel,* 542 U.S. at 260 (finding that "nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there"). However, Saint-Gobain's rush to file its petition in this Court supports an inference that it is attempting to obtain information here that is broader than that truly needed to pursue its UK lawsuit. *See In re Appl. of Gilead Pharmasset LLC*, C.A. No. 14-mc-243 (GMS), 2015 WL 1903957, at *12 (D. Del. Apr. 14, 2015) ("A perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis.") (internal quotations omitted) (citing *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C–07–5944–SC, 2013 WL 183944, at *3 (N.D. Cal. Jan. 17, 2013), *In re Application of Caratube Int'l Oil Co., LLP*, 730 F.Supp.2d 101, 107–8 (D.D.C. 2010), and *In re IPC Do Nordeste, LTDA*, No. 12–50624, 2012 WL 4448886, at *9 (E.D. Mich. Sept. 25, 2012)). Accordingly, the Court finds that the timing of Saint-Gobain's request weighs against its request for leave to serve the subpoena on 3M.

For these reasons, the Court denies Saint-Gobain's request.

## IV.     ORDER[2]

**IT IS HEREBY ORDERED THAT** Saint-Gobain's petition to take discovery pursuant to 28 USC 1782 is **DENIED**.

Date: October 16, 2020

                                               *s/Katherine Menendez*
                                               Katherine Menendez
                                               United States Magistrate Judge

---

[2] At oral argument, the Court inquired whether the parties believed this ruling should be issued as a report and recommendation or as an order, and counsel candidly shared that the answer to this issue is unclear. Indeed, Courts have not reached a consensus about the issue. *In re Ex Parte Application of Pro-Sys Consultants & Neil Godfrey, Applicants*, No. CV 16-MC-91016-PBS, 2016 WL 4154306, at *1 (D. Mass. Aug. 5, 2016) (noting the unsettled nature of the question and citing competing cases). Having reviewed the relevant caselaw in this area, the Court concludes that an application for discovery under § 1782 is not a dispositive motion, even though its resolution brings to a close the entire issue in a miscellaneous case. *See In re Hulley Enterprises, Ltd.*, 358 F. Supp. 3d 331, 340–42 (S.D.N.Y.), *aff'd sub nom. In re Hulley Enterprises Ltd.*, 400 F. Supp. 3d 62 (S.D.N.Y. 2019) (analyzing the relevant case law and concluding that "a motion seeking discovery as an aid to a later adjudication by a court or tribunal is not a "dispositive" motion within the meaning of Rule 72—even if it is brought in a special proceeding whose only purpose is to obtain that discovery"). However, the Court notes that this conclusion is not intended to foreclose the parties from litigating the issue of the appropriate standard of review should objections to this Order be filed with the District Court. The District Court, of course, will make its own determination regarding the appropriate standard of review to be applied.